So I will turn to the first case on the calendar, United States of America versus Alexander Zhukov. Council. Good morning. Your Honor is good morning. May I begin, Your Honor? Please proceed. Thank you. Your Honor is good morning from Mr. Zhukov, Andrew Frisch. This October 21, two laptops found their way toward Mr. Zhukov. We were preparing one pursuant to the conference we had with Judge Committee and the government advised us, I believe on Friday afternoon, that they had uploaded a discovery onto a government laptop and provided it. We'll be speaking with Mr. Zhukov later today to see how that's going. We hope to Zhukov has been in custody for two years, whether the trial whether there's an attempt to start the trial on November 23, as it's currently scheduled, or whether it starts some other time. Given the circumstances, we really don't know what's going to happen with regard to the pandemic, potential jury issues, and he simply should not be in custody anymore. Under the circumstances, you disagree with the judge's findings that there's no combination of circumstances that can assure his return to court. I don't. If we were starting, if this were a typical case and typical circumstances, and we were at the stage of arraignment, Judge Pooler, I think I'd have difficulty finding argument to the contrary. But that's not where we are. I've been in contact with the federal defender, I've been in contact with Ms. Von Dornum, who has graciously agreed to help us coordinate this to be in touch with pretrial services, to get him electronically monitored, to get him to a quarantine site and to get him to ultimately a shelter. This happens under unusual circumstances, which this is. So under normal circumstances, I would agree. And we did not make this application earlier. We're making it now because of the circumstances presented by the pandemic. Well, Mr. Frisch, excuse me, I thought you were making this application in large part because of essentially fair trial concerns that made this an extraordinary circumstance, right? That it was the inability to review discovery that was the problem. I don't minimize that that may still remain a problem, even if Mr. Zhukov has his law applicable. But I thought that was the the driving factor here. Is this different than quite a number of cases that we've had where there were extensive delays in getting to trial? And I'm not sure that, I mean, two years is certainly long, but I don't think it's the longest we've had. And I understand also there's the virus concern, but that too is something that we've dealt with in quite a number of situations. So what is so extraordinary about this now that we have, at least in part, resolved the discovery problem? There are a number of reasons why this is different, and one of them is the time that we have. Even if the trial gets adjourned somewhat, we need to confer with Mr. Zhukov. This is not a typical case. There is extraordinary discovery, and it's intricate. It's Excel spreadsheets, many, many checks. We need to confer with him. As I say, if we were if we were day one and the trial were a year or two down the line, I imagine we could figure out logistically how this could happen. But whether the trial remains less than a month from now, which is impossible, or perhaps something more realistic in January, we need to be in a room with him at some point. And under the circumstances, there's not enough time. And with regard to your honor's point about the length of time, that it's two years, I agree. But there's more to the equation of speedy trial than just the length of time that someone is awaiting trial. It's the time that it's taken to get to where we apparently are on Friday with the laptop. I raised this issue in January to Judge Corman before the pandemic. I was told the only way to do this was if somebody physically went to the MDC. No one told me that a laptop was possible. I raised this again in the spring. In August, I asked for a laptop. I expressly said, I'm unaware this has ever happened that someone's been provided a laptop at the MDC. No one corrected me when I went to the judge and applied for a laptop in September. The government opposed it. They said idiosyncratic idiosyncratically we're aware this happened once, but it's happened more than idiosyncratically. I now understand this happens not all the time, but it happens for people in need. And Judge Committee, I submitted the order for a laptop on September 22nd. He denied it, I think, October 14th or 15th. So it's not just the length of time, Judge Lynch, where I agree with you. It's what's going on for that length of time. It's the nature of the case and his need to refute discovery. And here we are on October 26th. And we have a trial that's either going to come up on November 23rd or shortly thereafter. And the circumstances prevent what we might have been able to do if today were the beginning of the case. This is not an issue. Has anyone in the Eastern District or the circuit ruled on whether pandemic related delays are an exception to speedy trial? Has anyone made that claim yet? Or argued? I will ask the government, they may be in a better position to know. I don't know. I don't know the answer to that question with certainty, Judge Pooler. I don't believe so. What I said in my initial filing was that I believe this is an issue of first impression that raises an unusual mix of circumstances, not just the passage of time, not just the pandemic, but the nature of the discovery and the fact that all this time has gone on without Mr. Zucoff able to make use of his time with the means that existed. To be sure, this is a national problem. It's a problem outside of this case. I know in the Southern District that Judge Fiala and Judge Engelmeyer have been dealing with laptop related issues. Judge Chen in the Eastern District, I cited some cases in my reply papers, including a case in client to sit in confined spaces for a significant period of time. I mean, this is not the government has said, well, there's been 100 attorney visits at the MDC. Fair enough. This is not a situation, however, where a lawyer is going to review a PSR or a plea agreement or something confined, where you need to spend a half hour. This is multiple hours, day after day after day in a wired user sometime for rebuttal. Let's hear from the government. Thank you. Good morning, Your Honor. I said you may proceed. Thank you. My name is Alexander Midland. I represent the government. Why does the government oppose a laptop as early as January? This is an all paper case, isn't it? Your Honor, the government did not oppose a laptop. In fact, in September, when this issue came up at a status conference, we said explicitly that's government appendix 39 to 40, that we had no objection to it. I don't come up before September. No, Your Honor, I believe that defense counsel raised it at the end of August, at which point we began trying to make arrangements to connect him and his discovery. Because what we understood was that he needed to be able to visit with his client at that point when visitation at the MDC, the Metropolitan Detention Center, was impossible. At that point, we arranged for them to meet beneath the Eastern District Courthouse, only to then be told that he wouldn't do it. Has any court yet ruled whether pandemic delays are an exception, allowable exception to the Speedy Trial Act? Well, Your Honor, two answers to that. One is that the judge in this case has been excluding time steadily in the interest of justice. But I will also say that the chief judge of the Eastern District has, for most of this year, been also issuing parallel exclusions of time in light of the pandemic. I think Your Honor is asking perhaps whether there's been Speedy Trial litigation in light of that. I don't know the answer to that. I will say that this is not, in fact, an appeal of a decision under the Speedy Trial Act. He's been incarcerated now for two years. That's quite a long time. Your Honor, we agree. And that's why the government is taking extraordinary measures to make this trial happen. Will you be ready for trial? Absolutely, Your Honor. Absolutely, Your Honor. We've identified witnesses who can fly in to testify. For a small number of witnesses, we have moved to allow remote testimony. We've obtained waivers from New York State that will allow witnesses to testify without undergoing quarantine if they come from states in the New York quarantine list. The Eastern District can provide a jury for what would be a lengthy trial? Yes, Your Honor. There's going to be, as you saw in the defense reply, there's going to be an expanded veneer to provide a larger number of potential jurors to allow for the assumption that there will be a larger number of people who will say they can't do it. But the courtroom has been totally refitted. The jurors will be sitting in the audience, not in the jury box. And the jury box will be used by witnesses who will, in turn, occupy a rotating series of spaces so that no witness sits in the same seat as a prior witness until all of the seats are sanitized. So the courtroom is being refitted, and the government, in fact, is contracting with a vendor. Please. What about the public? If the jury is sitting in the public gallery, where will the public sit? There's going to be, much as when we have an overflow courtroom, there's going to be another courtroom that has a live feed of what's happening in the main courtroom. And of course, we would love to have everyone in the same room, but we're All right, continue. Thank you, Your Honor. So the legal issues in this case, under the Bail Reform Act, are quite narrow. And it's very clear that the district court's bail decision was correct, and that it certainly wasn't plainly erroneous. And I think you just heard the defendant say... The jury counsel's latest submission, where he talks about the public defender being able to work with them, and some monitoring, electronic monitoring of Mr. Graff. Well, I read that submission with interest, since it's the first that I heard of it, and it certainly wasn't part of the submission before the district court. I still think it's insufficient. Our brief discusses the fact that in the pandemic, pretrial services essentially is operating on an honor system, because electronic monitoring can't be effectively done at this time. I also think that as laid out, even in the defendant's reply brief, there's nothing about... It says that I think the public defender will escort the defendant out of the courthouse, but it doesn't then say where he will be escorted to. And I think the operative theory remains that the government will fund his subsistence in a hotel. But there's been no application to us to do that. There's been no discussion of how that funding would be arranged. This is entirely different from any successful bail application that I'm familiar with, in terms of the degree of... I'm trying to think of an appropriate term. The degree of thought, frankly, that it represents about convincing the district court that the defendant will be able to return to court. There's simply... There are no shorters. There's no bond proposed. There is no discussion of even moral suasion. This is a defendant who is a foreign national, who's accused of defrauding Americans from Russia and Bulgaria. He's a fluent English speaker. He's a frequent traveler. And as I said, the application that was brought before the district court, which this court is reviewing for a clear error, doesn't contain any specifics about how the defendant will live, why he's likely to return to court, who's going to make sure that he returns to court. The other point I'll make to your honors is that the federal defenders represent another defendant in this case. And so I was surprised to learn from the reply brief that they are apparently working with counsel with regard to this defendant. I had planned to sort of tell your honors about what we had done to try and ensure that this defendant had access to his discovery. I can also address the Bail Reform Act. I'll do both, absent any other questions. So, good. The point I was going to make to your honors is that we had pointed out in April that defense counsel could have video conferences with his client. And we only learned last week as the district court that counsel didn't have a video conference until mid-October, the day that this motion was filed. And the screens can be shared in those video conferences. What we learned in August was that Mr. Zhukov needed to review his discovery and couldn't do it adequately at the MDC. At that point, we arranged for meetings in the courthouse, only to have counsel tell us and the court that actually he wouldn't go. When the defendant said he wanted a laptop, we told the court in September that we had no objections and that we knew it had been done in a prior case, which I will point out the one that we knew of is a pro se defendant. Again, that's the government appendix 39 to 40. The court then told us to get the Bureau of Prisons' views, which we reported back accurately, which is that the BOP said that it was unsafe to have a laptop in a cell and doing so elsewhere shouldn't be done short of necessity because it required an exception to the prison's normal protocols around COVID-19 safety. They are trying to keep the prisoners in cohorts, as my understanding, and this involves breaking the cohort. The court urged the defendant to hire associate counsel to go to the MDC. After the defense counsel apparently did so, it took two weeks for a merge, explaining why that lawyer wouldn't go back. At that point, when it finally became clear that the defense wasn't going to avail themselves of other means of connecting this defendant and his discovery, the court indicated that this is last Wednesday, that it intended to order the Bureau of Prisons to give the defendant access to a laptop and directed defense counsel to get that laptop as soon as possible. When we became concerned that defense counsel was not on a jail two days after the status quo... Isn't there something you could have done months ago, giving him the laptop with all the discovery loaded onto it? Your Honor, we have been sending discovery to the jail on hard drives. We had not been asked for a laptop. What I'm trying to tell the court is that we address these issues as they arise. Most defendants there, in fact, almost no defendants have laptops. It's not something that is normally provided, and so we were trying to address any issue that was brought to our attention. Just to answer Your Honor's question about the exclusions of time, the chief judge has excluded time through September 14th, Your Honor. And then parallel to that, as I said, the judge in our case has been issuing exclusions in the interest of justice, which have been litigated below. All right. Well, your time has excluded Judge Kearse. Judge Lynch, do you have any questions? No questions here. Hearing none, we'll turn back to Mr. Frisch for his rebuttal. Thank you, Judge Pooler. Just a few things. First of all, because of what I was told by the MDC in January, I didn't know that a laptop was possible or that I could ask for. And in August, I expressly said that in a submission, I'm unaware this has ever been done. And in fact, it was denied. This all didn't happen until last Wednesday and Friday. There's an attack on me that continues for not doing this, for not doing that, that we weren't on a path. We bought the laptop. We were sending it to the CJA people to be disabled. I don't think there's anything wrong under the circumstances to be concerned about being as this judge in Pennsylvania was. And I think we all are. We're on a Zoom call today for a reason. For having people who live with people who have immune deficiencies, as is the case with my trial partners or anyone else or myself, I'm in my mid-60s, to be concerned about the virus and to be concerned about being in a confined space for significant periods of time. This is a real problem. I don't share the government's optimism about this trial. Certainly for due process and right to counsel reasons, this trial cannot go forward as scheduled. Whether it'll get moved or not, I don't know. But even if it can... Well, but Mr. Frisch, you see what you're asking us to do is to micromanage this process from the virtual 17th floor. The district court, we're already talking about a new proposal for bail arrangements that surfaces in this court that wasn't before the district court. You ask us to assume that a trial won't happen on November 23rd without any sense, and I'm not blaming you for this, I don't think anyone could have a sense of when it would be if it's not November 23rd, and to project when there might turn into a speedy trial violation. Presumably you mean a constitutional speedy trial violation, because somehow this is all the government's fault or will turn out to have been the government's fault at some future point when the trial emerges. So I'm having trouble understanding what we can or should do. We're here to review the decisions of the district court. You've already said that the district, essentially, implicitly at least, that the district court was correct to have Mr. Zhukov detained at the beginning, and now we're talking about was the district court correct to have continued that detention when precisely, in late September or early October, but now really we're talking about when at some future point this might turn into a speedy trial violation, or what now is or is not possible and appropriate with the assistance of the federal defenders in ways that the district court has never contemplated or been told about. So having trouble understanding what we can do here. Your Honor, this is an extremely difficult situation, mostly for Mr. Zhukov. It's a very fluid situation. There are things happening that are changing the landscape literally every day, some that mitigate the circumstances, some that don't. I have a trial scheduled on November 23rd. I realize there's an opportunity to go back to the district court and raise some of these things, but time is of the essence and it is very difficult for us to figure out what to do. What I know is as follows. Mr. Zhukov is extradited here, he's a foreign national, he's been in custody for two years, and there was a solution to this in January or the spring or August, and the government knew about that solution and didn't tell us. I understand, Judge Lentz, that that's a separate, that's a speedy trial issue that will litigate, constitutional speedy trial, that will litigate in a separate setting. But meanwhile, I have a client... I don't think... I agree with you. I don't see that it's appropriate to somehow blame you or other defense counsel, given the difficulties of these circumstances. But it's also not clear to me that we are in a position to make a fact-finding about what actually happened in January, to the extent that that fact-finding requires determining whether the government was somehow at fault, any more than whether you were somehow at fault. We're told by Mr. Minlin that at that time the government was, the government meaning the U.S. Attorney's Office, was no more aware than you. We're told of more than one case. We're told that the Bureau of Prisons has taken a consistent position that it doesn't like to do this. We're told by the the laptop relief until the summer. Now, you know, who's... who, if anyone, is to blame for this? Maybe no one is to blame for it. What exactly the flight path of all of this was are things on which a district court can make fact findings. I don't see that we can, on the record that we have now. Judge Lentz, I agree that there's a record on the speedy trial that needs to be developed, and that's why there's a motion to dismiss pending in district court, and perhaps we'll be here in another setting. We have a client right now who is just beginning now to review discovery. There's obviously, we can all acknowledge, complications in conferring with him, at least as regards 3,500 in trial exhibits. It is difficult, if not impossible, for counsel to go into the facility or to avail themselves. Yes, but Mr. Frisch, what you are asking for is for him to be released, and you're asking for him to be released essentially on his own cognizance, when he has no fixed abode in the city, when the capacity for electronic monitoring, as far as I can see, would be zero if he goes to a shelter, where there is an application of sorts for him to be put in a hotel at government expense, with what kind of security I'm not aware, other than some prospect, perhaps, of electronic monitoring, and the district court made a fact finding that this was insufficient to keep a person who has no contacts with the United States from fleeing, and I understand his passport is in the custody of someone other than himself, though I take it not in the custody of the government. Am I right about that? My understanding is that it's expired, and it's in the custody of the Russian government, correct? Your Honor, we made a specific application. The only thing that's new is that the federal defender would help us out. We already made an application that he'd be permitted to be on top of. As Judge Wood suggests, shouldn't that application be made to the district court in the first instance? We made an application to the district court that he'd be released to a shelter. Judge Pullo, the only thing I've added, and perhaps Your Honor's believe I should take that to the district court first, is that the federal defender will help me with some of the logistics. Well, as Judge Lynch pointed out, we don't find facts here, and that's a new fact, and it should go to the district court in the first instance. Fair enough, Judge Puller, but we did ask that he be released to a shelter. The only thing that the federal... But you agree, Mr. Frisch, Mr. Frisch, you agree that if he's released to a shelter, there is no electronic monitoring. I don't know that. My understanding is that there can be electronic monitoring in a shelter. I don't know that at all. Don't these things operate off telephones, and is he going to have a telephone in a shelter? Yes. He could have a flip telephone that we would purchase for him. He can routinely and regularly call in and check with pretrial services as they can check with him pursuant to the phone. These obstacles are dealt with in other cases. We applied to the court some time ago to ask Judge Committee to recommend to the State Department that the State Department allow his wife to have a visa to be here and participate in securing his attendance. Judge Committee declined to do that. I mean, we can certainly go back to Judge Committee and raise some of these issues in light of what's happened last week with regard to the laptop. Certainly, if he's released, if we can get him released, it'll mitigate the constitutional, the speedy trial problems. The laptop helps with the right to counsel and due process problems. All right. We're going to have to end it here. We will reserve decision and decide this shortly. Thank you both. Thank you, Judge.